**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: UNASSIGNED**

| | |
|---|---|
| AMERICAN ACTIVE ANODE MATERIAL PRODUCERS<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | **Court No.: 26-02905** |

## COMPLAINT

The American Active Anode Material Producers ("AAAMP" or "Plaintiff"), by and through their counsel, allege and state as follows:

## ADMINISTRATIVE ACTION TO BE REVIEWED

1. Plaintiff seeks judicial review of negative material retardation determinations of the U.S. International Trade Commission (the "Commission") in the antidumping and countervailing duty investigations of *Active Anode Material from China*. Plaintiff contests certain factual findings and legal conclusions that resulted in the Commission's final negative material retardation determination. *See Active Anode Material from China; Determinations*, 91 Fed. Reg. 16,968 (Int'l Trade Comm'n Apr. 3, 2026). The determination and views are contained in *Active Anode Material from China*, Inv. No. 701-TA-752 and 731-TA-1730 (Final), USITC Pub. 5719 (Mar. 2026) ("Final Determination" or "USITC Pub. 5719").

## JURISDICTION

2. This action is brought pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(ii). This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), which confers the Court exclusive jurisdiction over civil actions under 19 U.S.C. § 1516a.

## STANDING OF THE PARTIES

3. Plaintiff is a coalition of U.S. producers of active anode material consisting of Anovion Technologies and NOVONIX Anode Materials LLC. Anovion Technologies is a U.S. producer of active anode material with production facilities in Sanborn, New York and NOVONIX Anode Materials LLC is a U.S. producer of active anode material with production facilities in Chattanooga, Tennessee. NOVONIX and Anovion were members of the petitioning coalition which served as Petitioner in the antidumping and countervailing duty investigations of *Active Anode Material from China.* As such, Plaintiff participated in the investigation and is an interested party as described in Section 771(9)(F) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(F). Moreover, Plaintiff was also a party to the investigation that led to the determination being challenged herein. Accordingly, Plaintiff has standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. On April 3, 2026, the Commission published in the Federal Register its determination that the establishment of an industry in the United States is not materially retarded by reason of subject imports in the antidumping and countervailing duty investigations of *Active Anode Material from China. See Active Anode Material from China*, 91 Fed. Reg. 16,968 (Int'l Trade Comm'n Apr. 3, 2026). The Summons commencing this action was timely filed

with this Court on April 30, 2026, *see* ECF 1, pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and U.S.C.I.T Rules 3(a)(2) and 6(a).

5. This Complaint is filed within the time specified in 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 2636(c), having been filed within 30 days of the filing of the Summons.

**STATEMENT OF CLAIM**

6. The Commission's negative material retardation determination with respect to subsidized and dumped active anode material from China is unsupported by substantial evidence on the record and otherwise not in accordance with the law as averred in Counts I through XXI set forth herein.

**HISTORY OF THE CASE**

7. On December 18, 2024, Plaintiff filed Petitions alleging that active anode material (hereinafter "AAM") imported from the People's Republic of China ("China") is being or is likely to be sold at less than normal value ("LTNV") within the meaning of section 731 of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1673 (hereinafter, "The Tariff Act"). Plaintiff further alleged that AAM imported from China is subsidized within the meaning of section 701 of the Tariff Act, *codified as amended* at 19 U.S.C. § 1671.

8. On December 26, 2024, the Commission published the institution of the antidumping investigations and countervailing duty investigations in *Active Anode Material from China*. *See Active Anode Material from China*, 89 Fed. Reg. 105,100 (Int'l Tade Comm'n Dec. 26, 2024). The Commission held a staff conference on January 8, 2025, and the parties filed Post-Conference Briefs on January 13, 2025.

9. On February 7, 2025, the Commission reached a preliminary determination that there is a reasonable indication that the establishment of an industry in the United States is materially retarded by reason of AAM from China that was alleged to be sold in the United States at

less than fair value and by imports of the subject merchandise that were alleged to be subsidized by the government of China. *See Active Anode Material from China*, 90 Fed. Reg. 9,163 (Int'l Trade Comm'n Feb. 7, 2025). The preliminary views of the Commission were set forth in *Active Anode Material from China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Preliminary), USITC Pub. 5585 (Feb. 2025).

10. On February 27, 2025, the Commission released draft U.S. producer, U.S. purchaser, importer and foreign producer questionnaires. *See* Letter from Calvin Chang to Counsel (February 27, 2025).

11. On April 18, 2025, AAAMP submitted Comments on the Draft Questionnaires. Petitioner's Comments on Draft Questionnaires, *Active Anode Material from the People's Republic of China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Final) (April 18, 2025) (hereinafter "Petitioner's Comments on the Draft Questionnaires"). Petitioner urged the Commission to collect, *inter alia*, information from the domestic producers regarding the impacts of Chinese imports on the ability to access financing and make technical advancements necessary to produce AAM at a commercial scale. *Id.* at 2. The Commission ultimately did not collect this data as explicitly worded by Petitioner. *See Final U.S. Producers' Questionnaire* at V-12. The fact that the Commission did not collect this information as explicitly worded by Petitioner impacted the reliability of the Commission's analysis of significant adverse impacts of subject imports on the establishment of the domestic industry.

12. In advance of the final phase hearing, AAAMP submitted a Prehearing Brief on February 2, 2026. Petitioner's Prehearing Brief, *Active Anode Material from the People's Republic of China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Final) (Feb. 2, 2026) (hereinafter

"Petitioner's Prehearing Brief"). The Prehearing Brief addressed several issues of importance including arguments and material evidence directly related to Chinese dominance. Petitioner submitted information regarding China's domination of the global active anode material markets and the resulting negative impact on the U.S. industry. Petitioner's Prehearing Brief at 14-54. For example, because of China's dominance, China controls the U.S. AAM market, including U.S. prices. *Id.* Petitioner explained in its Prehearing Brief that as a result of the significant volumes of low-priced Chinese imports, the domestic industry is experiencing significant price effect and adverse impacts. *Id.* at 102-103. Petitioner alleged the establishment of the domestic industry has been materially retarded as a result. Petitioner submitted material evidence in support including media, scholarly, and governmental reports. *Id.* at Exhibits 1-34.

13. Petitioner also argued in its Prehearing Brief that the evidence of negative price effects was substantial both under "traditional price factors" and under price factors specific to the circumstances of the material retardation standard. *Id.* at 97-124. There was considerable evidence of "traditional price factors" such as price suppression, price depression, and underselling, both collected by the Commission and submitted by the parties. *Id.* at 98-101. Petitioner also submitted considerable evidence as to price factors in the context of material retardation. *Id.* at 101-112. Petitioner's Prehearing Brief included evidence that the price of subject imports has caused purchasers to delay the qualification of domestic producers and discouraged investors, hindering the domestic industry's ability to obtain financing. *Id.* at 76-80, 106-113. In support of these arguments, Petitioner submitted sworn affidavits. *Id.* at Exhibit 91, 97. The evidence proved a causal connection between lower priced subject imports and negative effects for the domestic industry. In particular, the Prehearing

Brief highlighted that the domestic industry is suffering negative price effects as it attempts to enter a market where pricing levels are set by Chinese firms. *Id.* at 97-101.

14. Petitioner also argued in its Prehearing Brief that U.S. purchasers use China's abundance of very low-priced products to leverage down U.S. prices during offtake agreement negotiations. *Id*. at 115-120. Petitioner submitted evidence, including contemporaneous business documents and sworn affidavits regarding the impact of Chinese prices during offtake agreement price negotiations with U.S. purchasers. *Id*. at Exhibit 97.

15. Petitioner also argued in its Prehearing Brief that because of the magnitude of China's domination in the AAM market, evidence that the domestic industry's performance and ability to obtain financing does not demonstrate a normal start-up market but rather demonstrates the significant adverse impacts by subject imports. *Id*. at 80.

16. Another important issue that was addressed in the Prehearing Brief was related to the impacts that Chinese imports have on preventing the domestic industry from receiving adequate investment, thereby resulting in the material retardation of the U.S. industry. *Id*. at 76-77, 115-120. Regarding investment, it was submitted that price is an important purchasing factor in regard to AAM and therefore price affects investment decisions. *Id.* at 76-77.

17. On February 12, 2026, the Commission held its final phase hearing, and on February 19, 2026, AAAMP submitted its Post-Hearing Brief. *See* Petitioner's Post-Hearing Brief, *Active Anode Material from the People's Republic of China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Final) (Feb. 19, 2026) (Hereinafter "Petitioner's Post-Hearing Brief"). Petitioner's Post-Hearing Brief again addressed the (a) domination of China in the global and domestic AAM markets; (b) negative price effects on the domestic industry by reason

of subject imports; (c) the causal connection between subject imports' control of the market price and the inability for the U.S. domestic industry to secure adequate investment; (d) the causal connection between the subject imports control of the market price and U.S. purchasers delaying the qualification of domestic producers; and (e) the use of subject imports to leverage down U.S. producers' prices during offtake agreement negotiations.

18. Petitioner's Post-Hearing Brief again addressed the adverse impacts on the domestic industry as a result of China's monopolistic position in the global AAM market and the correlation to the domestic industry's material retardation. *Id*. at 3.

19. In addition, and at the Commissioners' express request, Petitioner argued and provided material evidence including contemporaneous business documentation and sworn affidavits demonstrating that subject imports directly discouraged investment in U.S. producers, thereby materially retarding the establishment of the domestic industry. *Id*. at 10-14, Exhibits 2-6, 9-10.

20. Petitioner's Post-Hearing Brief also again addressed that the market price established by China hinders the domestic industry's qualification process by causing U.S. purchasers to delay qualification of U.S. producers. *Id*. at 9-10. Petitioner submitted material evidence including contemporaneous business documents and sworn affidavits in support of Petitioner's arguments. *Id*. at Exhibits 2-6.

21. Again, Petitioner's Post-Hearing Brief addressed U.S. purchasers' use of Chinese pricing in offtake agreement negotiations to leverage down U.S. producers' prices, resulting in significant adverse price effects. *Id*. at 4-9. Petitioner again provided contemporaneous business documents and affidavits demonstrating U.S. purchasers' use of the low-price of subject imports to lower the U.S. producers' prices. *Id*. at Exhibits 2-6.

22. On February 17, 2026, the U.S. Department of Commerce ("Commerce") issued its Final Affirmative Countervailing Duty Determination in *Active Anode Material From the People's Republic of China. See Active Anode Material From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 91 Fed. Reg. 7,261 (Dep't Commerce Feb. 17, 2026).

23. On February 17, 2026, Commerce issued its Final Affirmative Determination of Sales at Less Than Fair Value in *Active Anode Material From the People's Republic of China*. *See Active Anode Material From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 7,247 (Dep't Commerce Feb. 17, 2026).

24. The Commission's confidential Final Staff Report was dated March 2, 2026. Final Staff Report to the Commission, *Active Anode Material from China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Final) (Mar. 2, 2026).

25. On March 9, 2026, Petitioner submitted its Final Comments, which included comments on the Final Staff Report. Petitioner's Final Comments, *Active Anode Material from the People's Republic of China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Final) (Mar. 9, 2026) (hereinafter "Petitioner's Final Comments"). Among other submissions, Petitioner's Final Comments pointed out the abundance of evidence that price is an important factor in the decision to enter into offtake agreements and U.S. purchasers compare the U.S. costs to Chinese pricing during commercial negotiations. Petitioner's Final Comments at 2-5. Petitioner's Final Comments addressed that Chinese pricing directly contributed to delays in qualification of the U.S. industry at the direct expense of the domestic industry. *Id*. at 6. Petitioner also submitted that qualification and price are intertwined in the negotiation

process and Chinese pricing therefore leads to delays in U.S. producers obtaining offtake agreements and investment. *Id.* at 12. In addition, Petitioner submitted that the Commission's Verification report of the data provided by the largest U.S. producer confirms that China is selling below U.S. Producers' costs, including raw material costs.

26. On April 3, 2026, the Commission released its final determination that the establishment of an industry in the United States is not materially retarded by reason of imports in *Active Anode Material from China*. *See Active Anode Material from China*, 91 Fed. Reg. 16,968 (Apr. 3, 2026). The Commission's final determination contains several determinations that are not supported by substantial evidence and are otherwise contrary to the law. *See* USITC Pub. 5719.

**<u>COUNT I</u>**

27. Paragraphs 1 through 26 above are realleged and incorporated herein by reference.

28. The Commission's finding that the significant volume of imports, both by absolute volume and relative to consumption in the United States, did not have significant price effects or a significant adverse impact on the domestic industry, is not supported by substantial evidence and is otherwise contrary to law.

**<u>COUNT II</u>**

29. Paragraphs 1 through 28 above are realleged and incorporated herein by reference.

30. The Commission's determination to disregard the import purchase cost data collected by questionnaires is unsupported by substantial evidence and is otherwise contrary to law.

**<u>COUNT III</u>**

31. Paragraphs 1 through 30 above are realleged and incorporated herein by reference.

32. The Commission's determination and failure to address material arguments and material evidence regarding price depression and suppression is unsupported by substantial evidence and is otherwise contrary to law.

**COUNT IV**

33. Paragraphs 1 through 32 above are realleged and incorporated herein by reference.

34. The Commission's determination to disregard commercial shipments reported by the domestic industry as trial/test shipments is not supported by substantial evidence and is otherwise contrary to law.

**COUNT V**

35. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

36. The Commission's determination that Chinese imports that were sold below the U.S. producers' cost of production during the period of investigation had no adverse price effects is not supported by substantial evidence and is otherwise contrary to law.

**COUNT VI**

37. Paragraphs 1 through 36 above are realleged and incorporated herein by reference.

38. The Commission's determination that there is no causal relationship between the subject imports and the lack of an established domestic industry is not supported by substantial evidence and is otherwise contrary to law.

**COUNT VII**

39. Paragraphs 1 through 38 above are realleged and incorporated herein by reference.

40. The Commission's analysis failed to address material evidence and material arguments by the parties and is therefore not supported by substantial evidence and contrary to law. In particular, the Commission failed to address material evidence submitted by Plaintiff in Petitioner's Pre-Hearing and Post-Hearing Briefs including, but not limited to,

contemporaneous business documents, affidavits, and media, scholarly, and governmental reports submitted by Plaintiff.

**COUNT VIII**

41. Paragraphs 1 through 40 above are realleged and incorporated herein by reference.

42. The Commission's failure to meaningfully address evidence submitted by Plaintiff in Petitioner's Pre-Hearing and Post-Hearing Briefs regarding adverse effects of subject imports, including, but not limited to, China's domination in the market place and significant price effects and adverse impact on the domestic industry including media, scholarly, and governmental reports is not supported by substantial evidence and is otherwise contrary to law.

**COUNT IX**

43. Paragraphs 1 through 42 above are realleged and incorporated herein by reference.

44. The Commission's determination that there was no causal connection between the domestic industry's financial performance during the POI and subject imports is not supported by substantial evidence and is otherwise contrary to law.

**COUNT X**

45. Paragraphs 1 through 44 above are realleged and incorporated herein by reference.

46. The Commission's analysis of offtake contract price negotiations failed to address material evidence and arguments of the parties, including the contemporaneous business communications demonstrating U.S. purchasers using the prices of subject imports to lower U.S. producers' prices, and the Commission's determination that such information did not detract from the other record evidence is not supported by substantial evidence and is otherwise contrary to law. As such, the Commission's determination that offtake contract

price negotiations did not result in significant adverse price effects is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XI**

47. Paragraphs 1 through 46 above are realleged and incorporated herein by reference.

48. The Commission's determination that U.S. AAM purchasers' use of the alleged cost-plus analysis during contract price negotiations allowed U.S. producers to cover their cost plus generate a profit is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XII**

49. Paragraphs 1 through 48 above are realleged and incorporated herein by reference.

50. The Commission's determination that offtake agreement price decisions were reached "without regard to import competition" is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XIII**

51. Paragraphs 1 through 50 above are realleged and incorporated herein by reference.

52. The Commission's determination that the price of Chinese AAM does not directly influence offtake agreement prices is not supported by substantial evidence and is otherwise contrary to law. In particular, the Commission's determination regarding the evidence of purchasers using subject import prices to leverage down U.S. producer prices during offtake agreement price negotiations, including contemporaneous business communications, and that such evidence did not detract from the other record evidence is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XIV**

53. Paragraphs 1 through 52 above are realleged and incorporated herein by reference.

54. The Commission's decision to disregard evidence on the basis that the purchaser of Chinese imports did not participate in the Commission's investigation is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XV**

55. Paragraphs 1 through 54 above are realleged and incorporated herein by reference.

56. The Commission's determination to disregard certain evidence referencing the price of Chinese AAM submitted by Petitioner in its Post-Hearing Brief on the grounds that it allegedly does not depict discussions with a U.S. purchaser is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XVI**

57. Paragraphs 1 through 56 above are realleged and incorporated herein by reference.

58. The Commission's failure to meaningfully address material arguments and evidence, including evidence of cost breakdown comparisons during commercial negotiation, is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XVII**

59. Paragraphs 1 through 58 above are realleged and incorporated herein by reference.

60. The Commission's determination that subject imports have not caused purchasers to delay the qualification of domestic producers nor discouraged investors and hinder the domestic industry's ability to obtain financing, thereby materially retarding the establishment of the domestic industry, is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XVIII**

61. Paragraphs 1 through 60 above are realleged and incorporated herein by reference.

62. The Commission's finding that technical supplier qualifications are conducted completely separately from commercial negotiations regarding pricing in offtake agreements is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XIX**

63. Paragraphs 1 through 62 above are realleged and incorporated herein by reference.

64. The Commission's determination to disregard affidavits submitted by Petitioner on the basis that they lack supporting documentation is not supported by substantial evidence and is otherwise contrary to law.

65. As such, the Commission's determination that affidavits submitted by Petitioner did not detract from other record evidence is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XX**

66. Paragraphs 1 through 65 above are realleged and incorporated herein by reference.

67. The Commission's determination to disregard an affidavit submitted by Petitioner solely on the basis that it was prepared during the course of the trade remedy proceedings is not supported by substantial evidence and is otherwise contrary to law.

68. As such, the Commission's determination that the affidavit submitted by Petitioner did not detract from other record evidence is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XXI**

69. Paragraphs 1 through 68 above are realleged and incorporated herein by reference.

70. The Commission's determination that the domestic industry's performance and ability to obtain financing is indicative of normal start-up conditions and not significant adverse

impacts by reason of subject imports is not supported by substantial evidence and is otherwise contrary to law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) hold that the negative final material retardation *Final Determination* by the Commission with respect to the antidumping and countervailing duty investigation of *Active Anode Material from China* is unsupported by substantial evidence and otherwise not in accordance with the law;

(2) remand the *Final Determination* to the Commission with instructions to correct the errors set forth in this Complaint; and

(3) grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By: *<u>/s/ Daniel B. Pickard</u>*
Daniel B. Pickard, Esq.
Claire M. Webster, Esq.
Carson Easterling, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
*Counsel to American Active Anode Material Producers*

**CERTIFICATE OF SERVICE**

PUBLIC SERVICE

*American Active Anode Material Producers v. United States*
**Court No. 26-02905**

I hereby certify that a copy of this public submission was served on the following parties, via certified mail or registered mail, return receipt requested, on May 28, 2026.

On Behalf of Samsung SDI America, Inc.:
Lynn M. Fischer Fox, Esq.
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
202-942-5646
LynnFischerFox@arnoldporter.com
xtrade@arnoldporter.com

On Behalf of Solar Energy Industries Association (SEIA); Tesla, Inc.:
Matthew Nicely, Esq.
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20036
202-887-4000
mnicely@akingump.com

On behalf of SK Battery America, Inc.:
Lian Yang, Esq.
Alston & Bird, LLP
950 F Street, NW
Washington, DC 20004
202-239-3490
Lian.Yang@alston.com

On Behalf of Hart Consumer Products, Inc.; Milwaukee Electric Tool Corporation; Royal Appliance Manufacturing Co.; TTI Consumer Power Tools, Inc.; TTI Outdoor Power Equipment, Inc.; TTI Power Equipment Manufacturing, Inc.:
Daniel Robert Wilson, Esq.
Faegre Drinker Biddle & Reath LLP
1500 K. Street, NW
Suite 1100
Washington, DC 20005
202-230-5211 -- Voice
202-841-8465 -- Fax
daniel.wilson@faegredrinker.com

On Behalf of Prime Planet Energy & Solutions, Inc.:
Michael Jacobson, Esq.
Hogan Lovells US LLP
555 Thirteenth Street, NW
Columbia Square
Washington, DC 20004
202-637-5600 -- Voice
202-637-5910 -- Fax
michael.jacobson@hoganlovells.com

On Behalf of Panasonic Corporation of North America; Panasonic Energy Corporation of North America.:
Sydney H. Mintzer, Esq.
Mayer Brown LLP
1909 K Street, NW
Washington, DC 20006
202-263-3000 -- Voice
SMintzer@mayerbrown.com
tradeservice@mayerbrown.com

On Behalf of Shanghai Shanshan New Material Co., Ltd.:
Jared R Wessel, Esq.
Hogan Lovells US LLP
555 Thirteenth Street, NW
Columbia Square
Washington, DC 20004
202-637-5600 -- Voice
202-637-5910 -- Fax
Jared.wessel@hoganlovells.com

On Behalf of AESC Group Ltd.; AESC Hubei Co., Ltd.; AESC Jiangsu Co., Ltd.; AESC Ordos Co., Ltd.
Richard Mojica, Esq.
Miller & Chevalier Chartered
900 16th Street, NW
Washington, DC 20006
202-626-1571 -- Voice
202-626-5801 -- Fax
rmojica@milchev.co

On Behalf of BTR New Material Group Co., Ltd.:
Thomas Trendl, Esq.
Steptoe LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
202.429.8055 -- Voice
ttrendl@steptoe.com
trade@steptoe.com

On Behalf of American Clean Power Association:
Kristin H. Mowry, Esq.
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015,
202-688-3610 -- Voice
khm@mowrygrimson.com
trade@mowrygrimson.com

On Behalf of LG Electronics USA, Inc.; LG Energy Solution Michigan, Inc.:
Daniel L. Porter, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
202-663-8140 -- Voice
daniel.porter@pillsburylaw.com

On Behalf of Stanley Black & Decker, INC.:
Sarah Sprinkle, Esq.
Sandler Travis and Rosenberg, P.A.
1300 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
12027304969 -- Voice
ssprinkle@strtrade.com

On Behalf of Contemporary Amperex Technology Co., Ltd.; Huzhou Kaijin New Energy Technology Corp., Ltd.:
Brady Mills, Esq.
Taft Stettinius & Hollister LLP
1333 New Hampshire Avenue, NW
Suite 800
Washington, District of Columbia 20036
202-408-5153 -- Voice
513-381-0205 -- Fax
bmills@taftlaw.com

On behalf of Fluence:
John R. Magnus, Esq.
TradeWins LLC
1330 Connecticut Avenue, NW
Washington, District of Columbia 20036
202.744.0368 – Voice
jmagnus@tradewinsllc.net

The Honorable Lisa R. Barton
Secretary
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

Attorney in Charge
International Trade Field Office
U.S. Department of Justice Civil Division
Room 346
Third Floor
26 Federal Plaza
New York, NY 10278

Supervising Attorney
Civil Division – Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, D.C. 20436

*<u>/s/ Carson Easterling</u>*
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3803
carson.easterling@bipc.com