**IIN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

AMERICAN ACTIVE ANODE MATERIAL PRODUCERS

Plaintiff,

v.

UNITED STATES,

Defendant,

and,

LG ENERGY SOLUTION MICHIGAN, INC., PANASONIC CORPORATION OF NORTH AMERICA, PANASONIC ENERGY CORPORATION OF NORTH AMERICA, TESLA, INC., HUZHOU KAIJIN NEW ENERGY TECHNOLOGY CO., LTD., and CONTEMPORARY AMPEREX TECHNOLOGY CO., LIMITED,

Defendant-Intervenors.

**PUBLIC DOCUMENT**

Ct. No. 26-cv-02905-JCG

**DEFENDANT-INTERVENORS CONTEMPORARY AMPEREX TECHNOLOGY CO., LIMITED AND HUZHOU KAIJIN NEW ENERGY TECHNOLOGY CO., LTD.'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Brady W. Mills
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Xi (Jack) Yang

**TAFT STETTINIUS & HOLLISTER, LLP**
1333 New Hampshire Ave., N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Defendant-Intervenors Contemporary Amperex Technology Co., and Kaijin New Energy Technology Co., Ltd.*

November 23, 2026

# TABLE OF CONTENTS

**I. STATEMENTS PURSUANT TO RULE 56.2 .......... 2**
- **A. Administrative Determination Under Review .......... 2**
- **B. Questions Presented and Summary of Argument .......... 2**

**II. STATEMENT OF FACTS .......... 2**

**III. ARGUMENT .......... 2**
- **A. The Commission's Conclusion that Subject Imports Did Not Delay the Qualification of Domestic Producers Is Supported by Substantial Evidence .......... 3**

**IV. CONCLUSION .......... 6**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951)....................................................................................................5

**Other Authorities**

*Active Anode Material from China*, Inv. Nos. 701-TA-752 and 731-TA-1730,
USITC Pub. 5719 (Mar. 2026) ............................................................................ *passim*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| AMERICAN ACTIVE ANODE MATERIAL PRODUCERS<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant,<br>and,<br>LG ENERGY SOLUTION MICHIGAN, INC., PANASONIC CORPORATION OF NORTH AMERICA, PANASONIC ENERGY CORPORATION OF NORTH AMERICA, TESLA, INC., HUZHOU KAIJIN NEW ENERGY TECHNOLOGY CO., LTD., and CONTEMPORARY AMPEREX TECHNOLOGY CO., LIMITED,<br>Defendant-Intervenors. | **PUBLIC DOCUMENT**<br><br>Ct. No. 26-cv-02905-JCG |

**DEFENDANT-INTERVENORS CONTEMPORARY AMPEREX TECHNOLOGY CO., LIMITED AND HUZHOU KAIJIN NEW ENERGY TECHNOLOGY CO., LTD.'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant-Intervenors Contemporary Amperex Technology Co., Limited ("CATL") and Huzhou Kaijin New Energy Technology Co., Ltd. ("Kaijin") (collectively, "Defendant-Intervenors") file this response to the September 10, 2026, Rule 56.2 Motion for Judgment on the Agency Record filed by Plaintiff, the American Active Anode Material Producers, ECF No. 66 ("Pl.'s Br."). As detailed below, Defendant-Intervenors respectfully request that the Court reject Plaintiff's Motion and sustain the U.S. International Trade Commission's Final Determination.

## I. STATEMENTS PURSUANT TO RULE 56.2

### A. Administrative Determination Under Review

The administrative determination sought to be reviewed in this appeal is the U.S. International Trade Commission's ("ITC" or "Commission") final negative determination in the antidumping and countervailing duty investigation on active anode materials ("AAM") from China. *Active Anode Material from China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Final), USITC Pub. 5719 (Mar. 2026).

### B. Questions Presented and Summary of Argument

Defendant-Intervenors CATL and Kaijin agree with the Questions Presented and Summary of Argument as presented by Defendant. With respect to the Commission's finding that subject imports did not cause a significant adverse impact on the domestic industry, CATL and Kaijin additionally note that the Commission correctly determined that the domestic industry's lack of qualification by the period of investigation was normal and expected for startup companies without technical expertise or existing facilities, particularly in an industry wherein qualification is inherently time-consuming and resource-intensive, and can take years to complete even for experienced producers.

## II. STATEMENT OF FACTS

Defendant-Intervenor CATL and Kaijin agree with the Statement of Facts as presented by Defendant. No additional Statement of Facts is thus included herein.

## III. ARGUMENT

Rather than repeating well-pled arguments, Defendant-Intervenors CATL and Kaijin hereby endorse and incorporate by reference the arguments in opposition to the Plaintiff's Rule 56.2 Motion made in the Government's Response Brief filed on November 13, 2026. For the reasons set forth in the Government's Response Brief, as well as the further reasons detailed

below, CATL and Kaijin respectfully request that the Court deny Plaintiff's Motion for Judgment upon the Agency Record and affirm the Commission's final negative determination as being supported by substantial evidence and in accordance with law.

### A. The Commission's Conclusion that Subject Imports Did Not Delay the Qualification of Domestic Producers Is Supported by Substantial Evidence

According to Plaintiff, the Commission did not provide a reasoned analysis as to why delays in the domestic industry's qualification process were not caused by the presence of the subject imports from China. Pl.'s Br. at 49. Plaintiff is incorrect—the Commission explained at length that record evidence demonstrated that nascent producers without expertise or existing facilities would necessarily take longer to achieve qualification, and that the U.S. domestic industry's failure to achieve qualification was due to its failure to meet purchasers' safety-critical specifications, not subject imports.

As the Commission recognized, for a purchaser to begin sourcing AAM from a producer, the producer must complete a qualification process to demonstrate that the product meets the purchaser's requirements for battery performance and safety. Views at 22-23.[1] This qualification process typically takes multiple years, with the speed of its completion depending on the producer's existing facilities and expertise, continued progress, and whether they encounter any setbacks in building up their production capabilities. *Id.* at 22-24. While inherently rigorous and time-consuming, the qualification process is necessary because battery manufacturers bear the safety and regulatory consequences if unqualified AAM is incorporated

[1] Commission's Views are contained in *Active Anode Material from China*, Inv. Nos. 701-TA-752 and 731-TA-1730 (Final), USITC Pub. 5719 (Mar. 2026) (PR230). Public record citations are indicated by "PR," referring to list number 1 on the index of the administrative record, and confidential record citations are indicated by "CR," referring to list number 2 on the index of the administrative record. Accordingly, citations to the Commission's public views and publication are to record document PR230 ("USITC Pub. 5719"), and citations to the confidential Commission Views (hereinafter, "Views") are to record document CR268.

into their products and causes any damage to end-users. *Id.* at 22 (citing Confidential Staff Report at 1.14-1.15 & nn. 38, 39).

This recognition was not made in a vacuum—rather, it was made upon consideration of the entirety of the record, including testimony and evidence from numerous producers and purchasers that completion of the qualification process, while difficult and time-consuming, is not negotiable, and cannot be shortcut. Views at 50-51 & nn.190, 191 (citing, in part, to Confidential Staff Report at 1.11-1.17). For example, CATL, a purchaser, and Kaijin, a Chinese producer, provided detailed accounts of multiple qualification processes, including the time to complete them and the difficulties encountered throughout. *See* CATL Pre-hearing Br. at 5-9 (CR 204); Kaijin Post-hearing Br. at 2 (PR 199); Confidential Staff Report at 1.14-1.16 (citing to CATL and Kaijin's accounts). In particular, Kaijin's account showed how just one technical defect in a sample provided to the purchaser dramatically prolonged the time to complete qualification. Kaijin Post-hearing Br. at 3-8 (PR 199). Even where Kaijin, an experienced producer, was able to identify the underlying cause of a technical defect, it needed to undergo rounds of testing to calibrate its equipment, test future sample products, and verify the effectiveness of its production process adjustments through on-site audits, which took a significant amount of time. *Id.*

The Commission closely examined this and other information on the record and determined that the reason the nascent U.S. industry had not yet completed the qualification process was not because of subject imports or U.S. purchasers purposefully delaying qualifying domestic producers due to pricing considerations, but because the domestic industry had not demonstrated its ability to consistently meet purchasers' safety, performance, or technical requirements. *See* Views at 50-52, 55 & n.189-91, 204-05. Rather, substantial evidence

demonstrated that U.S. purchasers had and continued to provide significant time and resources to the domestic industry to enable it to become qualified, *see id.* at 51-54, and that "the qualification timelines for domestic producers (including Syrah and Novonix) are well within the range of normal for their other global suppliers for other battery products." *Id.* at 54-55.

The Commission further observed that start-up producers lacking production experience and expertise will inevitably face greater difficulties and start-up costs as they gain technical expertise to supply AAM at commercial scale, especially in this particular industry. Views at 58-59. Indeed, due to the capital-intensive nature, the performance of the domestic industry here, which is comprised of start-up companies without production experience or expertise, would not be expected to perform materially better than it is. *Id.* at 58-59. It was, therefore, not unexpected that the domestic industry had not yet achieved qualification. *Id.* at 58. Based on these considerations and reasoning, the Commission correctly concluded that the failure to obtain financing was indicative of normal start-up conditions, not due to subject imports. *See id.* at 50-55, 58.

Plaintiff does not contest the veracity of these facts. Instead, it asks the Court to reweigh the facts and to find that the U.S. purchasers delayed qualifying domestic producers of AAM because lower-priced Chinese AAM remained available. Pl.'s Br. at 49–52. However, under the substantial evidence standard, a court may not, "even as to matters not requiring expertise . . . displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). This Court cannot supersede the Commission as the trier of facts in the injury investigation and reweigh the evidence for the Commission.

In sum, the Commission considered the entire record and determined, based on substantial evidence, that because the inherently difficult qualification process being undergone by the domestic industry was following the normal timeline for inexperienced producers without established production or expertise, the lack of commercial sales was due to normal start-up operations, not subject imports. The Commission's finding that the subject imports did not materially retard the establishment of the domestic industry was, therefore, reasonable, based on substantial evidence, and in accordance with law.

## IV. CONCLUSION

Based on the foregoing, Defendant-Intervenors CATL and Kaijin respectfully request that this Court affirm the Commission's final negative determination.

Respectfully submitted,

/s/ Brady W. Mills

Brady W. Mills
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Xi (Jack) Yang

**TAFT STETTINIUS & HOLLISTER, LLP**
1333 New Hampshire Ave., N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Defendant-Intervenors Contemporary Amperex Technology Co., Limited and Huzhou Kaijin New Energy Technology Co., Ltd.*

Certificate Of Compliance

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 1,351 words, including text, footnotes, and headings, and excluding the table of contents, table of authorities, and counsel's signature block, according to the word count function of Microsoft Word used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

Dated: November 23, 2026